# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 13, 2014

The Honorable Rob Baiamonte
Goliad County Attorney
Post Office Box 24
Goliad, Texas 77963

Opinion No. GA-1058

Re: Whether a municipal development district may fund a new building for a senior civic center if the center will be operated by a private nonprofit corporation
(RQ-1165-GA)

Dear Mr. Baiamonte:

You ask whether chapter 377 of the Local Government Code authorizes a municipal development district to fund a senior civic center that is "owned and operated by a non-profit organization."[1] You explain that the City of Goliad Municipal Development District ("the District") would like to provide a grant to a nonprofit corporation to replace an existing building for a "Senior Citizens and Civic Center." The center is used to serve low-cost meals to senior citizens and to provide a venue for "health and nutrition education, games, social and business events and entertainment." Request Letter at 1. The center is, and under the terms of the grant application would continue to be, "owned and operated by Goliad County Senior Citizens, Inc., a non-profit corporation." *Id.*

Chapter 377 of the Local Government Code authorizes municipalities to create municipal development districts, which are authorized to "plan, acquire, establish, develop, construct, or renovate one or more development projects beneficial to the district." TEX. LOC. GOV'T CODE ANN. § 377.021(a) (West 2005). "Development project" is defined to include, among other things, a "civic center" or "civic center building." *Id.* § 377.001(3)(B) (West Supp. 2013). Based on your description of the proposed purpose and use of the building in question, it is likely that such a project would constitute a civic center. However, whether a particular project meets the statutory requirements to be funded as a development project involves questions of fact that are within the discretion of the board of directors of the development district to determine in the first instance. *See* Tex. Att'y Gen. Op. No. GA-0264 (2004) at 10 (explaining that whether a particular project satisfies the requirements of the Economic Development Act involves

---

[1]Letter from Honorable Rob Baiamonte, Goliad Cnty. Att'y, to Honorable Greg Abbott, Tex. Att'y Gen. at 2 (Nov. 14, 2013), http://www.texasattorneygeneral.gov/opin ("Request Letter").

questions of fact within the discretion of the development corporation). Because of the fact questions involved, we cannot definitively answer whether the particular development project about which you ask is authorized by chapter 377 of the Local Government Code.

In addition to asking about this particular project, you also ask whether a civic center may qualify as an authorized project if it will be owned and operated by a nonprofit organization rather than the municipal development district. Request Letter at 2. No Texas court cases or attorney general opinions have addressed this issue. In establishing the powers and duties of a municipal development district, the Legislature has authorized a district to "contract with a public or private person to: (1) plan, acquire, establish, develop, construct, or renovate a development project; or (2) perform any other act the district is authorized to perform under [chapter 377]." TEX. LOC. GOV'T CODE ANN. § 377.071(b) (West 2005). Under the Code Construction Act, the term "person" is defined to include a "corporation" or "organization." TEX. GOV'T CODE ANN. § 311.005(2) (West 2013). Thus, the express terms of chapter 377 authorize a municipal development district to contract with a private, nonprofit organization to plan, acquire, establish, develop, construct, or renovate a civic center. Under this broad contracting authority, a court would likely conclude that a municipal development district may contract with a nonprofit organization to operate a civic center.

Whether chapter 377 authorizes development of a civic center that will be *owned by* a nonprofit organization is a more difficult question. Chapter 377 does not define "civic center," but the term is commonly understood to mean "a municipal building or building complex, often publicly financed, with space for conventions, sports events, and theatrical entertainment." NEW OXFORD AM. DICTIONARY 313 (2001). Using this definition, a court could conclude that a municipality must own the building in order for it to qualify as a "civic center," thereby prohibiting ownership by a nonprofit organization. Without further guidance from the Legislature or the courts, we are unable to confirm that funding a civic center building is an authorized project under chapter 377 of the Local Government Code if the building will be owned by a nonprofit organization rather than the municipal development district.

If a municipal development district decides to contract with a private entity to perform any functions related to a civic center, its grant of public funds must satisfy the requirements of Texas Constitution article III, section 52, which precludes political subdivisions from using public funds for private purposes. TEX. CONST. art. III, § 52(a). Article III, section 52(a) does not bar all funding from a political subdivision to a private entity. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995) (explaining that the purpose of this provision is to prevent the gratuitous grant of public funds for a private purpose). The Texas Supreme Court has explained that the grant of public funds that benefit a private entity will avoid violating article III, section 52(a) if it satisfies a three-part test: (1) the predominant purpose of the expenditure is to accomplish a public purpose, not to benefit private parties; (2) there are adequate public controls in place to ensure that the public purpose is accomplished and to protect the public's investment; and (3) the political subdivision is receiving adequate consideration. *Tex. Mun. League Intergov'l Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002). Thus, if a municipal development district decides to contract with a private organization to perform any functions related to a publicly funded civic center, it must ensure that these requirements are met.

## S U M M A R Y

Whether any particular project of a municipal development district meets the statutory requirements in order to be funded as a development project involves questions of fact that cannot be determined through the opinion process.

A court would likely conclude that chapter 377 of the Local Government Code authorizes a municipal development district to contract with a private, nonprofit organization to operate a civic center.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee